ODD FELLOWS BEN. ASS'N OF GRAND UNITED ORDER OF ODD FELLOWS OF DISTRICT OF MISSISSIPPI *v.* SMITH.

(Division B. May 6, 1935.)

[161 So. 115. No. 31686.]

Gabe Jacobson and J. B. Truly, both of Meridian, for appellant.

**Percy M. Lee** and **O. B. Triplett, Jr.,** both of Forest, for appellee.

864

Argued orally by **Gabe Jacobson**, and **J. B. Truly**, for appellant and by **O. B. Triplett, Jr.**, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee brought this action against appellant in the circuit court of Scott county to recover the sum of five hundred eleven dollars and fifty cents, the aggregate sum of premiums paid by her to appellant on a life insurance policy, with interest thereon, as damages caused her by appellant's alleged repudiation and anticipatory breach of her contract of insurance. By agreement, there was a trial before the circuit judge, resulting in a judgment in appellee's favor for the amount sued for, eight hundred forty-two dollars and eighty cents. From that judgment appellant prosecutes this appeal.

Appellant is what is known as a fraternal insurance company. On August 4, 1907, appellee became a member of the association and received therefrom a life insurance policy, commonly known as a benefit certificate. The monthly premium to keep it in force was one dollar. The certificate provided that if the insured should die more than three years after its issuance the beneficiary should be paid whatever amount might be paid into or collected by the society "from the financial members," provided that the amount to be paid should not exceed

one thousand dollars. In 1913 appellant's constitution and by-laws were revised and changed so as to provide that if certificate holders in appellee's class should pay one dollar and fifty cents per month dues and fifty cents semiannually, instead of one dollar a month dues, upon death one thousand dollars would be paid absolutely instead of conditionally. Appellee accepted this change, and up to the time of bringing this suit (a period of about twenty-one years) she paid the monthly dues of one dollar and fifty cents as well as the fifty cents semiannually. There were some changes made by appellant in its constitution and by-laws in 1919, but if they affected in any wise appellee's certificate she had no knowledge thereof.

In 1933 appellant revised and amended its constitution and by-laws reducing the monthly dues of certificate holders in appellee's class to seventy-five cents per month instead of one dollar and fifty cents, and providing a maximum payment on death of the sum of three hundred dollars instead of one thousand dollars, conditioned on that sum being raised ''from an equable division among all claims due in that certain month, of three-sixths of the Mortuary Fund accumulated during that same certain month in which complete proofs of death of the insured are filed.''

About the first of July, 1934, appellant demanded of appellee that she surrender her certificate and accept in lieu thereof a certificate provided for by the 1933 revision of its constitution and by-laws and pay seventy-five cents a month dues instead of one dollar and fifty cents. Appellee declined to do this; she tendered to appellant the dues of one dollar and fifty cents a month, which appellant refused to accept. Appellee thereupon paid under protest dues of seventy-five cents a month, and at once notified appellant that its action was a repudiation of her contract of insurance and she would so treat it and bring suit for damages for such breach, and,

pending the litigation, would continue to pay seventy-five cents a month dues under protest. Appellee thereupon in the same month, July, 1934, brought this action.

Appellant's constitution and by-laws have always reserved the right in appellant to make revisions and changes therein and provide that past as well as future certificate holders should be bound thereby. Such revisions and changes, however, must be reasonable and cannot impair vested rights or radically alter the contracts of its certificate holders. Newman v. Knights of Pythias, 110 Miss. 371, 70 So. 241, L. R. A. 1916C, 1051; Butler v. E. H. of Columbian Woodmen, 116 Miss. 85, 76 So. 830, Ann. Cas. 1918D, 1137. It is at once apparent that appellant's 1933 revision violates that principle; it scales the benefits from one thousand dollars to three hundred dollars, or less, and the evidence showed that at the time the monthly assessments were bringing in only around one hundred dollars and sometimes less. The change, therefore, did not affect appellee's contract. It seems, therefore, that there is no ground to doubt appellant's repudiation and anticipatory breach of the contract. The 1933 revision of its constitution and by-laws and the action of its officers thereunder could mean nothing less.

Appellant contends, however, that appellee cannot stand on the breach, because pending the litigation she elected to pay the seventy-five cents monthly dues and keep alive the certificate it tried to force on her. In considering this question it should be borne in mind that from the beginning these reduced dues were paid under protest, appellee insisting on her rights under the repudiated contract. It will be observed from what has been said that there was practically no delay in appellee's recognition of appellant's repudiation of the contract and the bringing of her suit.

The question is whether appellee had the right to bring this action, and at the same time hold onto whatever benefits the certificate, which appellant tried to force on her, carried, in case she failed in her suit. There is some apparent conflict in the authorities on this question. However, on an analysis of the cases we do not think such conflict is substantial. We think O'Neill v. Supreme Council, etc., 70 N. J. Law, 410, 57 A. 463, 1 Ann. Cas. 422, states the sound principle. In that case the revision and amendment of the by-laws took effect October 1, 1900. The insured was required to pay a monthly assessment of five dollars and four cents instead of his former assessment of twelve dollars. This reduction was on account of the reduction of the benefits from five thousand dollars to two thousand dollars. The insured from that time until the last of September, 1901, paid the society the sum of five dollars and four cents but repeatedly tendered to the society the amount of the former assessment, which it refused; the smaller assessment being paid under protest. The court held that the payment of so much as the society would accept, accompanied by a tender of a larger sum that insured deemed was due, did not of itself constitute an acceptance by him of the revised and amended laws; that the insured was not estopped to sue for the breach of the contract, for it appeared that the society had not in any wise changed its position in reliance upon the insured's conduct. That decision is supported by Supreme Council American Legion of Honor v. Black, 123 F. 650, 59 C. C. A. 414; Roehm v. Horst, 178 U. S. 1, 20 S. Ct. 780, 44 L. Ed. 953; Supreme Council of American Legion of Honor v. Daix (C. C. A.), 130 F. 101. A discussion of this question with references to the authorities will be found in 5 Cooley's Briefs on Insurance (2 Ed.), page 4679, et seq.

Appellant largely relies on Supreme Council v. Lippincott (Circuit Court of Appeals, Third Circuit) 134 F. 824, to sustain its position. In that case the society had issued to the insured a certificate for five thousand dollars. Afterwards it adopted a by-law reducing the insurance certificate from five thousand dollars to two thousand dollars and thereafter refused to consider the five thousand dollars certificate in force for more than two thousand dollars. The insured protested against the reduction and offered to pay assessments on the five thousand dollars certificate, which were refused by· the society; he thereafter paid assessments on the reduced amount under protest for a period of two years and five months, when he notified the society for the first time of his intention to accept its repudiation of the insurance and· demand a repayment of the dues paid. The court held that the insured waited too long; that this amounted to an election to treat the contract as continuing, notwithstanding the society's breach.

Under the facts here, there is no estoppel whatever ·against appellee. Her conduct is no wise misled appellant to its prejudice; there was no change in its position. Putting the matter in a simple form, appellee said to appellant: ''You have repudiated the contract in my judgment. I have protested against it without effect. I, therefore, am forced to accept the situation and sue for damages for the breach, but pending the suit, for fear I might be mistaken as to my rights, I propose to hold onto the certificate you offered me against which I also protested, so that, if I fail in my suit I will still have a little left.''

Under this state of facts there is no sound reason why ·appellee should be precluded from prosecuting this· action under the principles of election.

As to the measure of damages, the basis, of course, for the measurement is the repudiated contract. That provided for the payment of a fixed amount of one thou-

sand dollars. The court below fixed as the measure of damages the monthly dues paid by appellee, with interest. Many of the courts have adopted that rule, making no reduction on account of the protection afforded the insured during the currency of the policy. Other courts hold that the proper measure of damages is the value of the policy at the time of the repudiation, and that is ascertained by deducting from the face of the policy the unearned premiums for the life expectancy of the insured. The evidence in this case showed that appellee was seventy-six years of age when the breach took place; that although her life expectancy, according to the life insurance tables, was between five and six years, in fact it was only one year, because she had been stricken with paralysis and had a serious kidney affection. A discussion of this question will be found in 5 Cooley's Briefs on Insurance (2 Ed.) beginning at page 4699. It is unnecessary to decide which is the proper rule to be applied in this case, because "the value of the policy rule" would entitle appellee to more than she recovered.

Affirmed.