# Pollock *v.* Pittsburgh, Bessemer & Lake Erie R. R. Co., Appellant.

*Lateral support — Highways — Liability of abutting owner to traveler on highway—Statute of limitations—Appeals—Issue defined.*

1. The right of lateral support from abutting owners exists in favor of highways.

2. The adjoining owner owes the duty of such support to a highway as an obligation to the community, and, because of the superior claim, the support extends to the highway in its improved condition. In this respect the liability differs from the duties and rights between adjoining land owners.

3. If a road is in fact a public highway, whether it is created by dedication, grant, ordinance, or court order, its existence, use and creation take with it all its attributes of the fee simple title necessary to sustain the purpose for which the grant dedication or court order was made, and lateral support is one of these attributes.

4. Where a traveler on a highway is injured by the giving way of a side of the road through the failure of the abutting owner to maintain a proper lateral support, and the owner admits, on appeal in a suit against it, that the injured person is a proper person to sue, and sets up the statute of limitations, the appellate court will limit its consideration to the issue thus defined.

5. In such case where it appears that excavation along the side of the road was made twenty years before, and that the excavator left along the highway at the top a bank five feet in width, but that this had been worn down by the elements until the protection had receded to a point close to, if not within, the highway limits, the statute of limitations will run from the actual occurrence of the mischief, and not from the time of the excavation.

6. Successive actions may be brought for each slipping or falling of the soil, though one excavation only is made.

Argued October 2, 1922.   Appeal, No. 114, Oct. T., 1922, by defendant, from judgment of C. P. Butler Co., June T., 1922, No. 106, on verdict for plaintiff, in case of I. N. Pollock v. Pittsburgh, Bessemer & Lake Erie Railroad Co.  Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.  Affirmed.

Trespass for personal injuries.  Before REIBER, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $3,347.25.  Defendant appealed.

*Error assigned,* inter alia, was refusal of judgment n. o. v. for defendant, quoting record.

*John H. Wilson,* of *Wilson & McQuistion,* with him *Templeton & Whiteman,* for appellant.—The duty of keeping a highway in a reasonably safe condition for public travel rests on the public authorities in charge of the highway so long as the highway is left open to public travel: Snyder v. Penn Township, 14 Pa. Superior Ct. 145.

There is no obligation or duty on the railroad company to keep a public road which it parallels in reasonably safe condition for public travel; that duty never shifts from the officials in charge of the public road. The only duty on the railroad company is to supply any part of the public road taken, and that in a reasonable time after knowledge of the taking.

The limitation of six years from date of removal of vertical support is laid down in Noonan v. Pardee, 200 Pa. 474.

*James M. Galbreath,* with him *W. B. Purvis,* for appellee.—A failure on part of defendant company to properly support the public highway at the place where the accident occurred, constituted a public nuisance: Lancaster Turnpike Co. v. Rogers, 2 Pa. 114; Com. v. Yost, 11 Pa. Superior Ct. 323; Stout v. Kindt, 24 Pa. 449.

The statute of limitations, does not begin to run against the party bringing suit until his right of action has accrued: Hamilton v. Hamilton, 18 Pa. 20; Cass v. Penna. Co., 159 Pa. 273.

OPINION BY MR. JUSTICE KEPHART, January 3, 1922:

Plaintiff, a passenger in an automobile, was injured when the public road on which he was traveling gave way, taking the car and its occupants down a steep cut running parallel with the road, defendant having removed the lateral support from the highway.

The doctrine of lateral support is a very old one, and has uniformly been held to be the right of an owner to

have his land supported and protected in its natural condition by the land of the adjoiner. Before the right can be extended to buildings or other improvements imposed thereon negligence, malice or wantonness must be shown (Home Brewing Co. v. Thomas Colliery Co., 274 Pa. 56), with the exception of those instances where the building is erected on the premises before a part of the land contiguous thereto is sold, as in the case of Durante v. Alba, 266 Pa. 444, 447. The rule is well established that municipalities owe to abutting land- or lotowners the duty of lateral support in the construction of highways, and when the right is invaded to the owner's damage a cause of action arises. We have been unable to find a case in Pennsylvania where the abutting landowner has been charged with the duty of lateral support to a highway, either in an improved or unimproved condition, though it is clear the right of lateral support from abutters exists in favor of highways. The adjoining land owner owes the duty of such support to a highway as an obligation to the community, and, because of this superior claim, the support extends to the highway in its improved condition; the liability here differs from the duties and rights between adjoining landowners. This court has given expression to such thought as affecting subjacent support of streets and the rule above announced has been recognized in some other states: Village of Haverstraw v. Eckerson (N. Y.), 20 L. R. A. (N. S.) 287, and cases there cited.

It does not appear in the record how the township acquired title to the highway, if it had a title; but this is not material. If the road is in fact a public highway, whether it is created by dedication, grant, ordinance or court order, its existence, use and creation take all the attributes of the fee simple title necessary to sustain the purpose for which the grant, dedication or court order was made, and lateral support is one of these attributes.

When the railroad excavated alongside the highway and removed its necessary support there was a violation of the right for which the defendant was liable if damages resulted. The abutting property owner, a railroad company, charged with the duty of lateral support, having violated this right to the prejudice of one member of the general public, the question would naturally arise as to who might legally sue for such violation, and the extent of recovery. The remedy for injury resulting from a wrongful act of an adjoining owner in removing lateral support is in the owner, but it may not be confined to the owner of the injured land.

In this case we are relieved from the duty of deciding whether one suffering injuries to his person through a violation of the right may sue for damages, and the extent, if any, of defendant's liability to the plaintiff and others. Defendant, through the manner of its submission of this appeal, admits, for purposes of the present case, that plaintiff is a proper person to sue, and can recover damages for personal injuries provided the action was brought within the period prescribed by the statute of limitations. These interesting matters pass out of the case; as does also any discussion of the responsibility of landowners to passers-by who may fall into excavations or other dangerous conditions on property close to public highways (Gramlich v. Wurst, 86 Pa. 74, 78), lately considered in an opinion by our Brother SCHAFFER in Hildebrand v. Director General of Railroads, 270 Pa. 86, 90. Nor shall we view the case in the aspect of a continuing nuisance, but confine our discussion to the question raised, as will now appear from a review of the facts involved.

The excavation was made more than twenty years ago, and, when completed, was thirty feet in depth, and at the top was five feet from the traveled portion of the highway. The excavator left, along the highway at the top, this bank or shoulder of earth five feet in width, which it now claims was sufficient support for the highway.

Through the action of the elements this gradually disintegrated, causing the land to slide away, until, when the accident happened, the protection had receded to a point close to if not within the highway limits. Plaintiff's driver, in passing another automobile, was compelled to go near the edge of the road, when the support, weakened by recent rains, gave way, precipitating the automobile and occupants into the cut below. There was abundant evidence to sustain a finding that a wearing away was going on up to the time of the accident, and as a result the bank, at the place where the ground broke, was within ten per cent of being perpendicular.

We need not here determine whether the original excavation was negligently made or whether the subsequent condition was negligently permitted to continue, though both might be important in measuring plaintiff's right to recover, and the extent of recovery. We are asked to extend the doctrine of Noonan v. Pardee, 200 Pa. 474, 483, to cover the facts of this case; as stated in the brief of appellant's counsel, "The only question to be determined......is whether...... plaintiff's cause of action ......is not barred by the statute of limitations," as ruled by the cited case. That case covered subjacent support, and, while much of the reasoning, the general characteristics of this support and the governing rules of law may be applied to lateral support, there is a substantial difference which must not be overlooked. Undoubtedly, since this court has so held, there is a duty resting on the owner of a superincumbent estate to act when there is an intermeddling with the subjacent estate; the upper owner is in law bound to take notice of this when it occurs. But here the adjoining owners have not such interrelated rights as would compel an owner to know just what the adjoiner is going to do or is doing, its effect when completed, and whether, in course of time, it might possibly result to his injury or the injury of his property. At the time this excavation was made it was possible for defendant to so construct its work that no

damage would result, or the stratification of earth might have been such as, in its judgment, to sustain the highway. If the municipality had been sued, upon what legal theory or rule could a recovery have been predicated? The excavation was lawful; it was not on or related to the adjoiner's property; there was no damage when the excavation was completed, and there could be none until there was an invasion of the municipality's premises. That invasion might never occur. It is admitted this plaintiff may rightfully sue in this action. But his infant child was in the automobile with him; if it had been injured, upon what possible theory could it have sustained a right of action at the time the excavation was made (the child was not then born)?

The weight of authority throughout the United States supports the principle that a landowner does not suffer damages until the earth is so much disturbed that it slides or falls, as the actionable wrong is not the excavation but the act of allowing the other land to fall. The statute of limitations begins to run from the actual occurrence of the mischief, which is the sliding of the earth, not from the time of excavation. It follows logically that successive actions may be brought for each slipping or falling of the soil, though only one excavation is made: 68 L. R. A. 691, 693 (notes); 1 R. C. L. 389. It may be likened to an illegal diversion of water, which gives rise to successive actions because of the continuing character of the trespass; each taking is a new offense: Standard Plate Glass Co. v. Butler Water Co., 5 Pa. Superior Ct. 563, 577. As the case is presented by appellant, the court was clearly right in entering judgment for appellee on the verdict.

The assignment of error is overruled and the judgment is affirmed.